Judy NIEMANN, Individually and as Executrix of the Estate of Travis Dan Niemann, Deceased and as Next Friend of Stacy Michelle Niemann, Henry Niemann and Bertha Niemann, Travis Niemann, Jr., and Rebekah Niemann, Appellants,

v.

REFUGIO COUNTY MEMORIAL HOSPITAL, Appellee.

No. 13–91–597–CV.

Court of Appeals of Texas, Corpus Christi.

May 6, 1993.

---

Mark Stewart, O. Paul Dunagan, Fort Worth, for appellants.

Ruth Russell Schafer, Peter R. Meeker, Davis & Davis, Austin, for appellee.

Before NYE, C.J., and GILBERTO HINOJOSA and KENNEDY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

The Niemanns appeal from the trial court's grant of a take-nothing summary judgment in favor of Refugio County Memorial Hospital and its administrator at the time, Bruce Giessel. The Niemanns claim that the hospital and Giessel negligently mishandled Travis Niemann's x-rays causing him a loss of a chance of survival. The Niemanns contend that the trial court erred in granting the summary judgment because material issues of fact exist. We affirm.

Travis Niemann went to the Refugio County Memorial Hospital emergency room for treatment on January 14, 1988. Dr. Duke, a contract physician, examined him and ordered chest x-rays taken. The Niemanns maintain that Travis was released from the hospital and told that if the x-rays revealed anything the hospital would call him. This instruction was contrary to the hospital's established practice of emergency room physicians telling their patients to call back for results of x-rays or other tests.

After taking Travis's x-rays, the hospital sent them to a radiologist in Victoria. The Niemanns assert that the radiologist reported his findings to the hospital dictation bank on January 15, 1988. The report was positive and indicated that Travis had cancer. The Niemanns allege that the hospital

never advised him about the x-ray report. The Niemanns contend that the x-ray report was not properly routed to the "on call physician." They assert that routing the report correctly would have prompted a quicker diagnosis and could have altered Travis's course of treatment and chance of survival.

Travis continued to have health problems, and on March 23, 1988, he went to Dr. Leal who ordered a second set of x-rays to be taken at the hospital. Upon reviewing the second x-rays, Dr. Leal advised Travis that he had cancer, Stage IV, and referred him to Dr. Burks. Four months later, Travis died of cancer.

By their lawsuit, the Niemanns assert that because of Giessel's and the hospital's actions, Travis suffered a loss of a chance of survival.

A defendant moving for summary judgment has the burden of showing as a matter of law that no material issue of fact exists as to the plaintiff's cause of action. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 166–67 (Tex.1987). This may be accomplished by defendant's summary judgment evidence showing that one element of plaintiff's cause of action is conclusively established against the plaintiff. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 106–07 (Tex.1984); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970).

The burden of introducing evidence to avoid summary judgment shifts to the nonmovant only if the movant's evidence meets the criteria of Texas Rule of Civil Procedure 166a(c), and negates all genuine issues of material fact with respect to an essential element of the nonmovant's cause of action. *White v. Wah*, 789 S.W.2d 312, 315 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied). To defeat a summary judgment, the nonmovant's controverting evidence need only raise an issue of fact with respect to an element of the cause of action negated by the movant's summary judgment evidence; it need not be sufficient to meet the non-

movant plaintiff's burden of persuasion at trial. *Id.; Cloys v. Turbin*, 608 S.W.2d 697, 699–700 (Tex.Civ.App.—Dallas 1980, no writ).

In a medical malpractice action, the plaintiff must prove by competent testimony that the defendant's negligence proximately caused the plaintiff's injury. *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex.1988). To do so the plaintiff must prove four elements: 1) a duty by the health care provider to act according to a certain standard, 2) a breach of the applicable standard of care, 3) an injury, and 4) a reasonably close causal connection between the alleged breach of care and the injury. *White*, 789 S.W.2d at 315; *Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213, 217 (Tex.App.—Houston [1st Dist.] 1986, no writ). In a medical malpractice case, the *possibility* that an act of negligence might have caused damages from a medical viewpoint is not sufficient to support a damage recovery. It must be shown that the act *probably* caused the injury. *See Valdez v. Lyman–Roberts Hosp., Inc.*, 638 S.W.2d 111, 116 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.).

Loss of a chance of survival endeavors to compensate a patient or his or her estate for the taking of an opportunity to recover from a medical condition. *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 792–93 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (citing D. Keith, *Medical Expert Testimony in Texas Medical Malpractice Cases*, 43 Baylor L.Rev. 1, 96–97 (1991); J. Perdue, *Recovery For A Lost Chance Of Survival: When the Doctor Gambles, Who Puts Up the Stakes?*, 28 So.Tex.L.Rev. 37, 37 (1987)). A suit for a lost chance of survival is much like a suit for contribution. *Karl*, 826 S.W.2d at 793. Lost chance seeks to provide compensation when a health care provider's actions were a concurrent cause, partly to blame for the patient's death or injury. *Id.*

As summary judgment evidence, the appellees included an affidavit by Dr. Burks. After reviewing Travis's medical records, his opinion was that Travis did not have a

chance of surviving his cancer in January 1988, because the cancer had spread extensively throughout his body. He further opined that even if Travis began cancer treatment in January his life expectancy would not have increased.

In response, the Niemanns submitted Dr. Fredric's affidavit as summary judgment evidence of their causation element. Rather than stating an opinion about how long Travis would have lived if he had learned about the cancer and begun treatment in January, Dr. Fredric only speculated about possible events. Dr. Fredric stated that it was certainly possible that Travis could have been a surgical candidate if diagnosis and treatment had been instituted immediately following his January emergency room visit. · He stated that it was possible that surgical or non-surgical treatment could have ameliorated some of his symptoms and, perhaps, increased his life span. Also, Dr. Fredric stated that it was possible that surgical, non-surgical, or a combination of both could have resulted in remission of Travis's cancer.

■ While the medical malpractice plaintiff is not required to show that a defendant's negligence was the sole cause of the plaintiff's injury or death, proof of reasonable probability is required. The Niemanns presented no evidence that raises a fact issue about proximate causation. Dr. Fredric's affidavit only addresses the possibility that Niemann might have been eligible for a transplant or that the cancer might have been treatable. This does not equate to a probability that Niemann's cancer would have been treatable.

■ There must be more than a possibility that an act of negligence might have caused the plaintiff's injury or death. Expert testimony that an event is a possible cause of a condition cannot ordinarily be treated as evidence of reasonable medical probability, except, when in the absence of other reasonable causal explanations, it becomes more likely than not that the condition did result from the event. *Lenger v. Physicians' Gen. Hosp., Inc.*, 455 S.W.2d 703 (Tex.1970). We fail to find evidence of a reasonable causal connection between the defendants' actions and Travis's death.

The Niemanns argue that in *Valdez* we recognized a cause of action for loss of a chance of survival. Although we discussed the possibility of a loss of a chance cause of action in dicta, we did not adopt it as such in that case. In *Valdez*, we reaffirmed the established rule regarding proximate causation. "The mere possibility that an act of negligence might have caused the damages from a medical viewpoint is not sufficient to support recovery. It must be shown that the act probably caused the injury." *Valdez*, 638 S.W.2d at 114–15.

■ Even if there is a cause of action for loss of a chance of survival, there must be evidence of a reasonable medical probability that the negligent act caused the injury or death. We conclude that there is no evidence of a reasonable medical probability that the hospital or the administrator caused Travis's death. We need not decide whether a cause of action for loss of a chance of survival exists. Appellants' point of error is overruled and the trial court's judgment is affirmed.

NYE, C.J., not participating.